NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HAWA ABDI JAMA, et al. | : | Civ. No. 97-3093(DRD) |
| Plaintiffs, | : | |
| v. | : | |
| ESMOR CORRECTIONAL SERVICES, INC., et al., | : | **O P I N I O N** |
| Defendants. | : | |

Derek S. Tarson, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
    Attorneys for Plaintiff Hawa Abdi Jama

Steven D. Weinstein, Esq.
New Jersey Resident Partner
Joseph N. Cordaro, Esq.
Blank Rome, LLP
Woodland Falls Corporate Park
210 Lake Dr. E., Suite 200
Cherry Hill, NJ 08002

Larry S. Reich, Esq.
Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174

Frank R. Volpe, Esq.
James C. Owens, Esq.
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005
    Attorneys for Defendants Esmor Correctional Services Inc.,
    James Slattery, Richard Staley, and John Lima

**Debevoise, Senior District Court Judge**

This is an action that nine plaintiffs brought against, Esmor Correctional Services, Inc. ("Esmor"), James Slattery, Aaron Speisman, Willard Stovall, John Lima, Diane McClure, and Richard Staley[1]. The checkered history of this case is disclosed in the numerous opinions issued since its inception in 1997. Suffice it to say, the case arose out of the appalling conditions that prevailed at the detention center in Elizabeth, New Jersey, that Esmor managed under contract with the Immigration and Naturalization Service. With one exception the plaintiffs were persons awaiting hearing on their applications for asylum.

Trial commenced in September, 2007. By the conclusion of the nearly six weeks trial, all of the plaintiffs except Hawa Abdi Jama had settled with all the remaining defendants. Four of Jama's claims went to the jury: i) violation of the Alien Tort Claims Act, 28 U.S.C. § 1350; ii) negligent hiring, training, retention and supervision of administrators John Lima and Willard Stovall; iii) violation of Jama's rights under the Religious Freedom Restoration Act, 42 U.S.C. § 2000 bb, et seq. ("RFRA"); and iv) negligent hiring, training, retention and supervision of Esmor security officers (the "negligence claim").

The jury found no liability against any defendant under the Alien Tort Claims Act and with respect to the claim of negligent hiring, training, retention and supervision of John Lima and Willard Stovall.

On the RFRA claim the jury found against Esmor and Lima, awarding her $1.00 in damages. On the New Jersey negligence claim the jury found against Esmor, Slattery, Staley and

---

[1] Originally there were numerous other defendants, but they either settled or were dismissed from the case. Due to his illness at the time of trial, Willard Stovall was severed from the remaining defendants.

Lima, awarding Jama $100,000.

Defendants have moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b). They contend that the verdict on the RFRA claim was erroneous because there was not evidence of a "substantial burden" on Jama's exercise of her religion, and the jury disregarded the evidence showing defendants established their statutory defense under RFRA to the effect that any burdens on Jama's exercise of religion were in furtherance of a compelling government interest and were the least restrictive means of furthering that interest. With respect to the negligence claim, defendants contend that the verdict ignored the court's statute of limitations charge and, in any event, Jama did not establish by a preponderance of the evidence that the allegedly negligent hiring, training, supervision and retention of certain Esmor security officers was a promote cause of any psychological or physical damage that she claims to have suffered at Esmor and, further, Jama did not prove by a preponderance of the evidence that she sustained any compensable psychological or physical damage as a result of the negligent hiring, training, supervision or retention of Esmor security officers.

If, after viewing the evidence in the light most favorable to Jama and giving her the advantage of every fair and reasonable inference, the verdict is supported by legally sufficient evidence, the jury verdict must stand. Lighting Lube, Inc., v. Witco Corp., 5 F.3d 1153, 1156. There is a substantial trial record in this case. When that record is examined and the reasonable inferences drain, one will ask how the jury could have decided otherwise. If Jama and the other witnesses are believed, if the documentary evidence is taken into account, there is revealed a history of grievous abuses of the religious beliefs and practices not only of Jama but also of others, utterly without justification; and there is revealed a pattern of physical and emotional

3

abuse of detainees, including Jama, perpetrated by untrained and often sadistic guards, all of which was known or should have been known by higher officers in Esmor. Only a few examples of this evidence will be referred to in this opinion, but they are sufficient to demonstrate why defendants' motion must be denied.

     Jama was a devout Muslim, as were many other detainees. She and others, presented evidence that her ability to practice her religion at Esmor was substantially burdened. Her attempts to pray in the way dictated by her religion were interfered with by the guards. With no justification or reason they snatched her covering from her head as she prayed. When she was seated on the floor praying, guards grabbed her and threw her on her bed. Guards threw her Koran into the garbage and permitted dogs to sniff it during dorm searches. There were totally unnecessary naked strip searches and other occasions when Jama's naked body was exposed to common view, a grievous offense to a Muslim woman. There was ample evidence that these practices by the guards were highly offensive to Muslim believers and that the guards and administrators were well award of their offensiveness.

     Defendants maintain that they went to pains to enable Muslim detainees to avoid eating pork, but there is ample evidence that although this may have been the goal, it frequently was not observed. A kitchen worker testified that on occasion there were no substitute foods for those who did not eat pork. The only cleric to whom Jama was given access was a priest who urged her to pray to Jesus. Lima's claim that he attempted to obtain Muslim religious leaders is negated by two letters from a local Islamic Center requesting to visit with Muslim detainees. Viewing the evidence in its entirety there is ample support for the jury's determination that Jama's religion was substantially burdened.

The offensive practices, about which numerous complaints were made to prison authorities, were so long-lasting and widespread that the policy making defendants either knew or should have known of their existence. Lima, as administrator, was particularly in a position to have been fully aware of these events. Jama specifically remonstrated with him about them, and he received communications from Stovall and Jama's attorney about interference with her prayer and her exposure to food that violated her religion.

Defendants failed utterly to prove their affirmative defense. Of course they had to preserve security within the detention center, but a head covering (as distinguished from hiding one's face) was not shown to have any security implication. Defendants had no compelling interest in serving pork to Muslims, throwing Korans in the garbage or on the floor, preventing Jama from praying on the floor, or permitting her naked body to be exposed in the showers and elsewhere. Certainly there were less restrictive means of serving whatever administrative concerns that defendants may have had.

Defendants Slattery, Staley and Lima (but not Esmor) asserted a statute of limitations defense on the state law negligence claim. Jama relied on a continuing offense theory to bring this claim within the New Jersey statute of limitations. The jury was charged:

> In the present case, Esmor continued in operations through June 17th, 1995, and then shut down on June 18th. This lawsuit was commenced on June 16th, 1997. If the officer defendants can prove that all of the acts of the Esmor guards, if any, result[ing] from negligent hiring, retention, supervision, and training occurred before June 16th, 1995, they have a defense against the negligent hiring, retention, supervision and training claim. In other words, if none of those alleged acts occurred on June 16th, 17th or 18th, 1995, the officers are entitled to the statute of limitations defense. The burden is on the defendant to prove this defense.

It is defendants' contention that "[t]here is not a scintilla of evidence of any act of an

Esmor guard occurring on June 16, 17, or 18, 1995, that caused injury to Plaintiff." (Def. Brief at 12). They cite Jama's testimony that during the early morning of June 18, 1995, while the detention center riot was being quelled, she was handcuffed, hosed down and sprayed with tear gas, but that it was the police (not the Esmor guards) who did it, and consequently Jama utterly failed to establish the existence of any act related to negligent hiring, training, supervision and retention that occurred on June 16, 17 or 18, 1995, or any injury arising out of such acts.

Defendants fail to address Jama's testimony that many of the guards' abuses which caused her psychological or physical harm occurred continuously each day of her detention. The dormitories remained filthy; the laughing and pointing by the guards when the detainees used the toilets and the showers never stopped; Jama was continually denied toilet paper and sanitary napkins; she had inadequate food; her religious needs were ignored. This was a continuing state of affairs, and there is no proof that it suddenly ended before June 16, 17 and 18, 1995. It is reasonable to infer that what had been going on in the Esmor detention center continued in its normal course until the riot resulted in closure of the center. It was defendants' burden to prove its statute of limitations defense, and they offered no proof in this regard. See Dunn v. Borough of Mountainside, 301 N.J. Super. 262, 270 (App. Div. 1997). There is ample evidence to support the jury's finding that the statute of limitations did not bar Jama's negligence claim against Slattery, Staley and Lima[2].

Esmor, Slattery, Staley and Lima also contend that they are entitled to judgment as a matter of law on the negligence claim because Jama failed to establish proximate cause between

---

[2] The statute of limitations had been tolled as to Esmor by virtue of its having been named as a defendant in a related class action. That action was settled.

any act resulting from negligent hiring, training, retention or supervision and any injury Jama suffered. They point to the terrible catastrophes Jama suffered in Somalia - the slaughter of her father and two brothers, being struck in the stomach with a gun, having her earlobe ripped off and being sent to a refugee camp.

After all, this, defendants assert, the consequences of the negligent hiring, supervision training and retention of the guards cannot have substantially caused Jama additional emotional injury. The defendants are clearly in error. There is substantial evidence that the actions of the guards, previously alluded to, caused this already impaired person further injury and prevented or delayed recovery from the psychological wounds with which she arrived at Esmor. Instead of finding refuge for which she fled from her tortured native country, she was thrust into a detention center where the guards mocked and violated her deeply held religious beliefs and subjected her to inhumane and occasionally torture-like treatment. There were the midnight sessions conducted by Lt. Wallington and his squad in which, for no reason other than practicing tactics, the squad routed all the inmates from their beds, lined them up against a wall, conducted demeaning strip searches, at least once with the use of a dog. There is the testimony (which must be accepted as true) that a security officer stomped on Jama's finger and kicked her in the head.

Dr. Geteles's expert testimony was to the effect that the abusive treatment that Jama received at Esmor exacerbated her pre-existing psychological injuries and caused further injury. It would hardly require an expert to support a finding that the treatment which Jama suffered caused substantial further physical and psychological injury.

The foregoing portions of this opinion mention only a fragment of the evidence that supports the jury's verdict. It is sufficient, however, to establish that the Defendants' motion for

judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) must be denied. The court will file an appropriate order.

                                                    /s/ **Dickinson R. Debevoise**
                                          DICKINSON R. DEBEVOISE
March 17, 2008                                    U.S.S.D.J.