**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HAWA ABDI JAMA, n/k/a HALI HASHI EGAL, JEYAKUMAR ANANTHARAJAH ABU BAKER, CECILIA KOU JEFFREY, ABRAHAM KENNEH, SHAMINU NANTEZA, DENNIS RAJI, AGATHA SERWAA, and SARAH TETTEH YOWER, : : : : : : : : | : |
|  | : Civ. No. 97-3093(DRD) |
| Plaintiffs, : | : |
|  | : |
| v. : | : |
|  | : **O P I N I O N** |
| ESMOR CORRECTIONAL SERVICES INC., n/k/a CORRECTIONAL SERVICES CORPORATION, JAMES SLATTERY, DIANE McCLURE, RICHARD STALEY, WILLARD STOVALL, and PHILIP JOHNSON, : : : : : : : | : |
|  | : |
| Defendants. : | : |

Appearances:

RUTGERS CONSTITUTIONAL LITIGATION CLINIC
By: Penny M. Venetis, Esq.
123 Washington Street
Newark, New Jersey 07102

DEBEVOISE & PLIMPTON LLP
By: Derek S. Tarson, Esq.
919 Third Avenue
New York, New York 10022

*Attorneys for Plaintiff*

BLANK ROME LLP
By: Steven D. Weinstein, Esq.

Joseph N. Cordaro, Esq.
Woodland Falls Corporate Park
210 Lake Drive E., Suite 200
Cherry Hill, New Jersey 08002

*Attorneys for Defendants*


**DEBEVOISE, Senior District Judge**

On November 13, 2007, the jury in this case returned a verdict for plaintiff Hawa Abdi

Jama ("Jama"), awarding her one dollar against two defendants for her claims under the

Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, and $100,000 on her related

pendant state law claims. Debevoise & Plimpton LLP ("D&P")[1] and the Rutgers Constitutional

Litigation Clinic (the "Clinic," collectively, the "Movants"), attorneys for Jama, bring this

application for an order granting certain attorney's fees and expenses, related to the RFRA

claims, pursuant to 42 U.S.C. § 1988.

## I.  BACKGROUND

This was an action brought by nine plaintiffs (the "Plaintiffs") against Esmor Correctional

Services, Inc. ("Esmor"), John Lima ("Lima"), and others.  The checkered history of this case is

described in detail in the numerous opinions issued since its inception in 1997[2].  Suffice it to say,

---

[1] The judge handling this case has no relationship and never has had any relationship with the law firm of Debevoise & Plimpton, LLP.

[2] See Jama v. U.S. I.N.S., 22 F.Supp.2d 353 (D.N.J. Oct. 1, 1998) (Motion to Dismiss); Jama v. U.S. I.N.S., 334 F.Supp.2d 662 (D.N.J. Sept. 9, 2004) (Summary Judgment); Jama v. U.S.I.N.S., 343 F.Supp.2d 338 (D.N.J. Nov. 10, 2004) (Summary Judgment); Jama v. Esmor Correctional Services, Inc., 2005 WL 2901899 (D.N.J. Nov. 1, 2005) (Motion to Stay Case Pending Appeals); Jama v. Esmor Correctional Services, Inc., 2007 WL 1847385 (D.N.J. June 25, 2007) (Daubert Motions); Jama v. Esmor Correctional Services, Inc., 2007 WL 4166016

the case arose out of the appalling conditions that prevailed at the detention center in Elizabeth, New Jersey (the "Elizabeth Center"), managed by Esmor under contract with the Immigration and Naturalization Service.  With one exception, the Plaintiffs were persons awaiting hearing on their applications for asylum.

The matter came to trial in September 2007 after more than ten years of expensive, complex litigation[3].  For most of the litigation, and for all of the trial, Plaintiffs were represented, pro bono, by lawyers and law students associated with the Movants.

## A. **The Claims and Verdict**

By the conclusion of the nearly six week trial, all of the plaintiffs, except Jama, had settled with all the remaining defendants.  Four of Jama's claims went to the jury: (i) violation of Jama's rights under the RFRA; (ii) violation of the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350;  iii) negligent hiring, training, retention and supervision of administrators John Lima and Willard Stovall; and, iv) negligent hiring, training, retention and supervision of Esmor security officers (the "Negligence Claims").  The total amount of damages sought was nearly $5 million, plus punitive damages, including $250,000 sought in statutory damages under RFRA.

On November 13, 2007, the jury returned a verdict, finding no liability against any defendant standing trial under the ATCA or pursuant to the claim of negligent hiring, training, retention and supervision of John Lima and Willard Stovall.

---

(D.N.J. Nov. 20, 2007) (Attorney's Fees); Jama v. Esmor Correctional Services, Inc., 2008 WL 724337 (D.N.J. March 17, 2008) (Motion for Judgment as a Matter of Law).

[3]Defendant, Willard Stovall, was severed from the case before trial because of his illness.

3

On the RFRA claim the jury found against Esmor and Lima, awarding her one dollar in damages.  On the New Jersey negligence claim, the jury found against Esmor, Slattery, Staley and Lima, awarding Jama $100,000.

## B.  Representation of Plaintiffs

The Clinic began representing Jama and eight other individuals (collectively "Plaintiffs"), pro bono, in June 1995, and commenced this litigation on their behalf, in June 1997.   D&P began working on the case, also pro bono, in December 1997.  Together, Movants submit that they have incurred expenses and rendered services valued at a combined total of more than $17.1 million on the case.

Jama, by letter, terminated her relationship with Movants in December, 2007, though Movants continue to represent Jama for purposes of Defendants' Motion for Judgment as a Matter of Law, and for purposes of this fee application[4].

## II.  DISCUSSION

The Supreme Court has repeatedly affirmed the application of the "American Rule" that "each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary."  Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937 (1983) (citing Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95

---

[4]Defendants, by sur-reply, contend that the Movants lack standing to make this application considering Ms. Jama's termination of her relationship with Movants.  The argument is unavailing for two reasons.  First, it is not insignificant that Movants continue to represent Jama in a critical, dispositive post-trial motion for Judgment as a Matter of Law.  Second, the court sees no danger of a conflict of interest arising as the result of this application.  See Mayberry v. Walters, 862 F.2d 1040, 1043 (3d Cir. 1988) (Holding that the attorney "had standing to maintain her petition in the district court, recognizing that in reality her petition is to be judged as though it were the petition of the client" since there was no apparent conflict of interest).

S.Ct. 1612 [1975] [Denying attorney's fees to a civil rights plaintiff]) .  Following the court's

decision in Alyeska Pipeline, Congress enacted the Civil Rights Attorney's Fees Awards Act of

1976, 42 U.S.C. § 1988, authorizing the district courts to award a reasonable attorney's fee to

prevailing parties in civil rights litigation.  Id.  The purpose of § 1988 is to ensure "effective

access to the judicial process" for persons with civil rights grievances.  Id. (citing H.R.Rep. No.

94-1558, p. 1 [1976]).  The court held that "[a] prevailing plaintiff  should ordinarily recover an

attorney's fee unless special circumstances would render such an award unjust.' " S.Rep. No.

94-1011, p. 4 (1976), U.S.Code Cong. & Admin.News 1976, p. 5912 (quoting Newman v. Piggie

Park Enterprises, 390 U.S. 400, 402 [1968])

## A.  Fee Shifting Under § 1988

  In this case, Defendants argue that Jama's one-dollar award and pendant state-law award

do not entitle her to damages under § 1988 because the facts supporting Jama's state-law claims

were "completely different" from those giving rise to her RFRA claims.  Defendants contend that

Jama's nominal damages award on her RFRA claim does not make her a prevailing party for fee-

shifting purposes.  Movants argue that much of the same conduct which gave rise to Plaintiffs'

RFRA claims also gave rise to the pendant Negligence Claims, and that Movants are entitled to

an award of attorney's fees under § 1988.

  A plaintiff prevails "when actual relief on the merits of his claim materially alters the

legal relationship between the parties by modifying the defendant's behavior in a way that

directly benefits the plaintiff." P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 855 (3d Cir. 2006)

(quoting Farrar v. Hobby, 506 U.S. 103, 111-12 [1992]). "[P]laintiffs may be considered

'prevailing parties' for attorney[s'] fees purposes if they succeed on any significant issue in

5

litigation which achieves some of the benefit the parties sought in bringing suit." Clementon, 442 F.3d at 855 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 [1983]).   In this case, Jama has secured: (1) nominal damages and a favorable judgment on the merits of her RFRA claims, and (2) substantial damages and a favorable judgment on the merits of her related state-law claims.  These achievements clearly result in both a modification of the Defendants' behavior, and a benefit for the prevailing party.  See Bridges v. Eastman Kodak Co., 102 F.3d 56, 58 (2d Cir. 1996)[5] (citing Farrar, 506 U.S. at 111-12 [1992]).

The Farrar Court found that the plaintiff in that case was not entitled to attorney's fees because he sought compensatory damages, but received no more than nominal damages.  Id. 506 U.S. at 115.  Whether a plaintiff is entitled to attorney's fees depends upon "the degree of plaintiff's overall success."  Id. at 114.  Justice Ginsburg, writing a concurring opinion, summarized why plaintiff Farrar was not entitled to attorney's fees:

> If ever there was a plaintiff who deserved no attorney's fees at all, that plaintiff is Joseph Farrar. He filed a lawsuit demanding 17 million dollars from six defendants. After 10 years of litigation and two trips to the Court of Appeals, he got one dollar from one defendant. As the Court holds today, that is simply not the type of victory that merits an award of attorney's fees.

---

[5]In Bridges, the Second Circuit Court of Appeals addressed the application for attorney's fees under 42 U.S.C. § 2000e-5(k), rather than § 1988, but the analysis is precisely the same.  See S.Rep. No. 1011, 94th Cong., 2d Sess. 3-4, reprinted in 1976 U.S.C.C.A.N. 5908, 5912; see also Walker v. Anderson Elec. Connectors, 944 F.2d 841, 846 n. 10 (11th Cir.1991). Cases decided under § 1988 (and other similar attorney's fees provisions)  "'therefore are authoritative in the Title VII context,' " Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 n. 16 (2d Cir.1996) (quoting Lyte, 950 F.2d at 103); see also Hensley v. Eckerhart, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7 (1983).

Id. at 116.  Although the instant litigation has lasted more than a decade, and involved claims for damages greater than the amount the jury ultimately awarded, Jama's award of more than $100,000 represents a substantial success, and clearly distinguishes this case from Farrar.

After the Supreme Court's decision in Farrar, the Second Circuit Court of Appeals decided a case similar to the one at bar, finding that the plaintiffs' victory on the merits of their Title VII claim, together with their win and award of damages on the merits of a related state-law claim, made them "'prevailing part[ies] eligible for attorney's fees and costs . . .'" Bridges, 102 F.3d at 59.  In Bridges, the plaintiffs did not win any damages on their federal law claim because they failed to prove compensable damages, and because of the court's decision to avoid double-recovery after plaintiffs were awarded significant damages on their related state-law claims.  Id.

The outcome was similar in the instant case, with Jama prevailing on her RFRA claim and on her pendant Negligence Claims, but winning only nominal damages on her RFRA claim. The jury here was not in a position to clarify whether it had concluded that Jama had simply not proven any compensable injury due to infringement of her religious freedom, or whether the result reflected the jury's inability to distinguish between those and other injuries Jama suffered, leading the jury to bundle all of Jama's injuries into one substantial award under Jama's Negligence Claims.  The court finds that the evidence strongly suggests that the jury's award on the Negligence Claims included compensation for injuries caused by RFRA-related conduct, since the RFRA-related conduct was such a significant part of Jama's Negligence Claims.

To be sure, as the Bridges Court noted, Plaintiffs pressing federal civil rights claims often combine these claims with related state-law claims, resulting in many permutations and combinations of relief.  As the court explained in Bridges,

> [t]he plaintiff may succeed on all, some, or none of her federal
> claims, while succeeding on all, some, or none of her state claims.
> On each winning claim, the plaintiff may achieve several forms of
> relief ( e.g., money damages, nominal damages, injunctions
> compelling or preventing certain future action, or declaratory
> relief). Accounting for full or partial settlements, alternative
> holdings, and reversals on appeal, it often becomes difficult to
> discern when a plaintiff has "prevailed."

Id. at 58.  But, in that case, the court held that in light of the fact that the claims were based upon

the same conduct, "plaintiff who received only nominal damages on her federal constitutional

claim, but substantial damages on a related state-law . . . claim, was eligible for attorney's fees on

the basis of her state-law-claim success."  Id., 102 F.3d at 59 (citing, Milwe v. Cavuoto, 653 F.2d

80, 84 [2d Cir. 1981]).

     In Bridges, the plaintiff's state and federal causes of action mirrored one another, and the

damages on the pendant state-law cause of action were designed to compensate for the very

injuries giving rise to the federal claim.  Thus, success on the pendant state-law cause of action

clearly constituted success on the federal civil rights claims.  Here, the pendant Negligence

Claims were based upon additional conduct unrelated to the RFRA claims; however, in light of

the evidence, the court finds that a substantial portion of the jury's $100,000 award on Jama's

state law claims (the "Award Ratio") reflects damages which Jama sustained as the result of the

infringement of her religious rights (caused by the negligent hiring, training, retention and

supervision upon which the Negligence Claims are based).

     A significant portion of the evidence Jama presented at trial related to her religious

background and to damages she claimed to have sustained while detained at the Elizabeth

Facility.  Jama was a devout Muslim, as were many other detainees.  She and others presented

extensive evidence that her ability to practice her religion at the Elizabeth Facility was

substantially burdened.  Her attempts to pray in the way dictated by her religion were interfered with by the guards.  With no justification or reason, the guards snatched her covering from her head as she prayed.  When she was seated on the floor praying, guards grabbed her and threw her on her bed.  Guards threw her Koran into the garbage and permitted dogs to sniff it during dorm searches.  There were totally unnecessary naked strip searches and other occasions Jama's naked body was exposed to common view, a grievous offense to a Muslim woman.  There was ample evidence that these practices were highly offensive to Muslim believers.

The evidence showed that Muslim detainees had to eat pork, and a kitchen worker testified that, on occasion, there were no substitute foods for those who did not eat pork.  The only cleric to whom Jama was given access was a priest who urged her to pray to Jesus.  The offensive practices, about which numerous complaints were made to prison authorities, were long-lasting and widespread, and Jama specifically remonstrated with Lima about them.  Lima received communications from Stovall and Jama's attorney about interference with her prayer and her exposure to food that violated her religion.  There is considerable evidence that the conduct of Esmor and Lima substantially burdened Jama's religious freedom such that, indeed, it is difficult to imagine that a significant portion of the jury's award was not based upon RFRA-related conduct.

Based upon the evidence, the court finds that between 33% and 50% of the jury's Negligence Claims award of $100,000 was designed as compensation for Jama's RFRA-related injuries.  Under the Farrar and Bridges frameworks, this finding renders Jama a prevailing party for attorney's fees purposes under § 1988.

In opposing the application for fees, Defendants rely heavily on Farrar's statement that:

9

> In a civil rights suit for damages . . . the awarding of nominal
> damages . . . highlights the plaintiff's failure to prove actual,
> compensable injury.  Whatever the constitutional basis for
> substantive liability, damages awarded in a § 1983 action 'must
> always be designed 'to compensate injuries caused by the
> [constitutional] deprivation.'  When a plaintiff recovers only
> nominal damages because of his failure to prove an essential
> element of his claim for monetary relief, the only reasonable fee is
> usually no fee at all.

Id., 506 U.S. at 115 (citations omitted).  The court finds this warning inapplicable.  The Farrar

Court was concerned that the "litigation accomplished little beyond giving petitioners 'the moral

satisfaction of knowing that a federal court concluded that [their] rights had been violated' in

some unspecified way."  Id. at 114 (quoting Hewitt v. Helms, 482 U.S. 755, 762 [1987]).  Unlike

the plaintiffs in Farrar and Hewitt, in this case, Jama achieved substantial success and a

significant monetary award on her related pendant state-law claims.  Indeed, Jama obtained

exactly what the Hewitt Court required: a favorable judgment requiring Defendants to pay

damages.  Hewitt, 482 U.S. at 761.

In further support of their arguments, Defendants contend that several other cases cited by

Movants, including Allen v. Dist. of Columbia, 503 A.2d 1233 (D.C. App. 1986), Bonner v.

Guccione, 178 F.3d 581 (2d Cir. 1999), Lightfoot v. Union Carbide Corp., 110 F.3d 898, 914 (2d

Cir. 1997), and Milwe v. Cavuoto, 653 F.2d 80 (2d Cir. 1981), do not comport with Movants'

application.

In Allen, the court directed that attorney's fees should be awarded to plaintiff, even

though he was awarded no damages on his federal civil rights claim, because he was awarded

significant damages on his pendant assault claim which was based upon "the same nucleus of

facts as his substantial constitutional claim."  Id. at 1236-77.  Defendants argue that "the facts

10

giving rise to Ms. Jama's negligent hiring claims were completely different from those giving rise to her RFRA claims." This argument is unavailing since certainly some substantial portion of the jury's verdict on the Negligence Claims reflected injuries caused by the same conduct which implicated RFRA.

In Bonner, the plaintiff failed to obtain either an enforceable judgment or settlement agreement against the defendants on her Title VII cause of action, and the court refused to award attorney's fees. Id., 178 F.3d at 594. Defendants argue, unconvincingly, that Bonner amounts to a Second Circuit mandate against allowing federal fee-shifting based upon the success of pendent state-law claims. Defendants also point to the court's statement that fee-shifting could not be implicated in a case in which the federal claim--whether constitutional or statutory--has been actually decided. Id. at 595. Defendants argue that since Jama's RFRA claim was "actually decided" (in her favor), Movants cannot seek fees based upon success on Jama's Negligence Claims. This contention is without merit. Even a cursory reading of Bonner reveals that the court intended to foreclose the awarding of attorney's fees only in those cases in which a federal civil rights claim has been "actually decided" adversely to the party seeking fees. Id.

Similarly, Lightfoot is inapposite. In that case, only the plaintiff's state-law claim survived summary judgment and went to trial, but plaintiff did not succeed on the merits of his federal claim. Id., 110 F.3d at 913. The court denied plaintiff's motion for attorney's fees, explaining that "attorney's fees are available in cases in which the plaintiff prevails on a wholly statutory, non-civil rights claim pendent to a substantial constitutional claim" the merits of which have been decided in his favor. Id. at 914 (citing Milwe, 653 F.2d at 84.) In the instant case, Jama has achieved victory on her federal claim as evidenced by her victory on the merits of that

claim together with her substantial damages award on the pendant Negligence Claims.

Finally, Defendants, citing <u>Milwe</u>, argue that Jama's successful state-law negligence claims are not "wholly statutory," and therefore is not relevant to this fee-shifting analysis. This argument is also unavailing. Although the <u>Milwe</u> Court noted that the fee-shifting statute could apply in cases "in which the plaintiff prevails on a wholly statutory, non-civil rights claim pendent to a substantial constitutional claim," the Court did not intend to exclude common law claims. <u>Id.</u>, 653 F.2d at 84 (citing <u>Maher v. Gagne</u>, 448 U.S. 122, 132 [1980]). The issue before the <u>Maher</u> Court was whether Congress was acting within its enforcement power, under § 5 of the Fourteenth Amendment, in "allowing the award of fees in a case in which the plaintiff prevails" on pendant claims which were non-constitutional, or "wholly statutory" claims. <u>Id.</u>, 448 U.S. at 132. The Court found that Congress was within its power. <u>Id.</u> A reading of <u>Maher</u> reveals that the term "wholly" was designed not to *exclude* common law claims–indeed, the distinction between common law and statutory claims was not at issue–but rather to *include* claims lacking a constitutional component, i.e., those that are "wholly statutory." <u>Id.</u> And, as Movants point out, federal courts have upheld awards of attorney's fees based upon a plaintiff's success on pendant state common law causes of action. <u>See</u> <u>Milwe</u>, 653 F.2d 80, and <u>Allen</u>, 503 A.2d 1233. Thus, the fact that Jama's pendant Negligence Claims, for which the jury awarded her $100,000, were common law causes of action, rather than "wholly statutory" claims, is not relevant.

**B. <u>Limitation of Award</u>**

In deciding the amount of the attorney's fees and costs to be awarded, the court must heed the Supreme Court's warning in <u>Farrar</u>, that "if 'a plaintiff has achieved only partial or limited

success, the product of hours reasonably expended on the litigation as a whole times a reasonable

hourly rate may be an excessive amount.'" Id., 506 U.S. at 114 (quoting Hensley, supra, 461 U.S.

at 436).  In view of any limitations of success, the court must engage "in [a] measured exercise of

discretion."  Id.

       A district court has broad discretion in determining the amount of an award of reasonable

attorney's fees, and the "results obtained" are an important factor in determining the final amount

of an award of attorney's fees.  Hensley, 461 U.S. at 434.  Where the attorneys for the prevailing

party have "obtained excellent results," counsel should "recover a fully compensatory fee,"

which normally encompasses "all hours reasonably expended on the litigation."  Id. at 435.  If,

however, the prevailing party "has achieved only partial or limited success," Hensley, 461 U.S. at

436, then the Court "can reduce the hours claimed by the number of hours spent litigating claims

on which the party did not succeed and that were distinct in all respects from claims on which the

party did succeed,"  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).

       The court finds that Movants indeed "obtained excellent results" for Jama on her RFRA

claims; however, the court will not grant fees and expenses beyond the extent of Jama's success

on her RFRA claims.  Since the Movants have already reduced the total amount of fees and

expenses requested to reflect only efforts made on religious freedom issues (the "Cost Ratio"),

the only question is whether the Cost Ratio is wholly excessive compared to the Award Ratio.

       Movants have provided a detailed account of the time and expenses comprising the Cost

Ratio, and argue that they are entitled to compensation for the same.  Applying the rates and

hours which Movants have submitted, Movants request is about 25.5% of the total fees and

expenses for the entire litigation.  Defendants present their own computations which lead to a

Cost Ratio calculation somewhat lower than the one Movants proffer.  Defendants' specific

objections concerning the number of hours attributable to RFRA will be addressed, infra, but

generally, there is no limiting characteristic of Jama's success on the RFRA claims which would

render Movants' request unreasonably large.

Under Farrar, attorney's fees should be limited by the extent of plaintiff's success on her

federal civil rights claim.  Id., 506 U.S. at 114.  The Cost Ratio under Movants' formula (25.5%)

is certainly less than the Award Ratio (33%-50%).  This means that the extent of Jama's success

obtaining relief for her RFRA-related injuries (relative to compensation for her other injuries)

exceeds the proportion of total costs Movants wish to claim as RFRA-related costs.  In view of

this comparison of ratios, the court will not further adjust the fees and expenses requested.  Thus,

Movants are entitled to all fees and expenses related to the RFRA claim not otherwise found to

be excessive or unreasonable.

## C.  Lodestar Analysis

"The most useful starting point for determining the amount of a reasonable fee is the

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  "The product of this calculation is called the

lodestar," Apple Corps. v. Int'l Collectors Soc'y, 25 F. Supp. 2d 480, 484 (D.N.J. 1998), and it

"provides an objective basis on which to make an initial estimate of the value of a lawyer's

services," Hensley, 461 U.S. at 433.  "The lodestar is strongly presumed to yield a reasonable

fee." Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir.

1996).

The party seeking an award of attorney's fees bears the burden of establishing the

reasonableness of both the hours worked and rates claimed.  Hensley, 461 U.S. at 433; Apple Corps., 25 F. Supp. 2d at 484.  Once the attorney's fee applicant has produced satisfactory evidence,[6] the burden shifts to "the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended."  Apple Corps., 25 F. Supp. 2d at 485.  "If the party opposing the fee petition meets its burden of proving that an adjustment is necessary, the court has wide discretion to adjust the attorneys' fee."  Id.

Once the lodestar has been computed, the "court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained."  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  A court, however, may not "decrease a fee award based on factors not raised at all by the adverse party."  Id.

Since the Cost Ratio, under the Movants' calculation, is less than the Award Ratio, i.e., the Movants' alleged fees and expenses reflect a cost effective representation vis-a-vis Jama's religious rights, the court is inclined to look favorably upon the Movants' calculations.

### (a) Reasonableness of Hours Expended

---

[6] Local Civil Rule 54.2(a), which governs motions for attorney's fees, requires "an attorney seeking compensation for services or reimbursement of necessary expenses" to file with the Court an affidavit which sets forth:

(1)   the nature of the services rendered, the amount of the estate or fund in court, if any, the responsibility assumed, the results obtained, any particular novelty or difficulty about the matter, and other factors pertinent to the evaluation of the services rendered;

(2)   a record of the dates of services rendered;

(3)   a description of the services rendered on each of such dates by each person of that firm including the identity of the person rendering the service and a brief description of that person's professional experience;

(4)   the time spent in the rendering of each of such services; and

(5)   the normal billing rate for each of said persons for the type of work performed;

within 30 days of the entry of judgement or order.  L. Civ. R. 54.2(a).

The first step in calculating the lodestar is determining whether the number of hours expended was reasonable.  Any "hours that were not reasonably expended" must be excluded from the fee calculation.  <u>Hensley</u>, 461 U.S. at 434.  "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary."  <u>Rode</u>, 892 F.2d at 1183.

The total number of attorney hours may also be reduced when "the documentation of hours is inadequate."  <u>Hensley</u>, 461 U.S. at 433.  The fee petition must be "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed,"  <u>Washington v. Philadelphia County Court of Common Pleas</u>, 89 F.3d 1031, 1037 (3d Cir. 1996), and should include "fairly definite information as to the hours devoted to various general activities," <u>Rode</u>, 892 F.2d at 1190.  It is not necessary, however, "to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." <u>Id.</u>

Movants' request is supported in meticulous detail by the certifications of Derek S. Tarson, Esq., of D&P, and Penny M. Venetis, Esq., of the The Clinic, in which the hours and tasks of the attorneys and students who worked on RFRA-related aspects of the case are set forth. Many of the costs of the litigation were born for items not clearly or directly related to RFRA. Movants offer a solution to this problem in the form of a system by which they have determined what percentage of the hours spent on various tasks should be attributed to work on Jama's RFRA claims.  Under the Movants' scheme, various tasks and expenses are categorized and weighted.  The weights for each category correspond to the extent to which fees and expenses in a given category related to the RFRA claims.  By combining all of the weighted totals, a total number of hours can be found for each professional who worked on the case.

16

Defendants submit two forms of objections regarding the hours claimed by the Movants. First, the Defendants argue that the Movants' formula for determining the percentage of billed hours which should be attributed to the work on Jama's RFRA claims is unreasonable. Defendants submit that the percentage of pages of trial and deposition transcripts is the best measure of the cost-significance of the RFRA claims, rather than the percentage of pages of briefs (the Movants' method). As noted, <u>supra</u>, the Movants' requested proportion of the total of claimed fees and expenses–25.5%–is less than the Award Ratio of 33%-50%, so the court views the Movants' calculations with favor. Second, while duly noted, Defendants proposed calculation method is merely an argument, and not "evidence," and the court finds that the Movants' method likely leads to an accurate estimate of the actual proportion of fees and expenses related to RFRA. Finally, and perhaps most importantly, Movants are in the best position to determine the formula for calculating the portion of their own work which can be attributed to the RFRA claims. Without evidence to the contrary, the court sees no reason, in this instance, to doubt the accuracy of Movants' method of estimation.

The Defendants also present numerous specific objections to various fees and expenses enumerated in Movants' original application, which Defendants argue were outside the scope of the representation of Jama in her pursuit of relief under RFRA, or were otherwise unreasonable. One group of objections addresses hours billed for tasks which Defendants argue were related to Movants' own mistakes and edification, including technical difficulties with software, various travel and meal expenses, a conflict with Jama, a misplaced document, software training, case management, time spent on the INS case, and reimbursement for a hotel stay to cover an unrelated IPO/sale. In a supplemental submission, Movants respond to each of these objections

and concede to several of them, reducing the total requested fees and expenses accordingly.  The court has examined each of the remaining objections and finds that none of them has merit.

Another group of objections addresses expert and deposition costs and other fees which Defendants claim are unrelated to RFRA.  Movants have responded to each of these objections, and the court has examined the arguments and evidence submitted by both sides.  None of these objections has merit.

Finally, the Defendants argue that many of the Movants billed hours were repetitive or excessive, including many of the hours billed for pre-trial and trial-related tasks.  Again, the court has reviewed the objections and evidence, and the court concludes that the hours claimed by the Movants are reasonable.

Thus, the court concludes that all of the hours shown by counsel's billing records are reasonable and related to RFRA, and the court will include all of the hours in the lodestar calculation.

### (b) Reasonableness of the Hourly Rate

D&P sets forth the following hourly rates for its lawyers and other staff:

| Employment Position/Level of Experience | Rate |
|---|---|
| Partner | $600 |
| Senior Associate | $335 |
| Fifth-year Associate | $300 |
| Fourth-year Associate | $265 |
| Third-year Associate | $235 |
| Second-year Associate | $215 |
| First-year Associate | $205 |

| Summer Associate | $100 |
|---|---|
| Senior Paralegal/Case Manager | $200 |
| Law Librarians | $150 |
| Litigation Support Staff | $125 |
| Other Legal Assistants | $80 |

The Clinic asserts that the reasonable hourly rate for Ms. Venetis's time is $400.

A "reasonable hourly rate is calculated according to the prevailing market rates in the community." Smith v. Philadelphia Housing Authority, 107 F.3d 223, 225 (3d Cir. 1997) (quoting Washington, 89 F.3d at 1035). "The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive." Public Interest Research Group v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995).

The court applied the appropriate case law and conducted a thorough analysis in a previous fee application in this same case, see Jama v. Esmor Correctional Services, Inc., 2007 WL 4166016, *1 (D.N.J. 2007), and determined that these rates are reasonable. Still, the Defendants argue that the rates proposed by Movants are excessive, and should be reduced to reflect what the Defendants argue are reasonable market rates in Newark. Movants contend that the rates they requested in the fee application are consistent with the earlier decision of this court in this case, and they are not unreasonable considering the market.

Defendants posit that the earlier fee decision involved a different balance of equities because the previous fees award followed a discovery dispute in which the Defendants were found to have improperly withheld a particular document. The court disagrees. As the Movants note, the amount awarded in the previous fee application does not reflect rates which the court

found to be generous, nor were the rates punitively exaggerated.  Instead, without regard to the basis giving rise to the award, the court applied these rates to the lodestar because the court determined that they are reasonable rates.  The formula for determining what is reasonable is the same for this fee applications as for the previous one.  Thus, the court concludes that the hourly rates submitted by the Movants are reasonable.

### (c) Lodestar Calculation

Having concluded that the Movants' submissions regarding the number of hours spent on the RFRA-related portion of this case are reasonable, and that the hourly rates submitted by the Movants are reasonable, the lodestar will be calculated by multiplying the hours submitted for each professional by the rate listed for the respective professional.  The product of these numbers yields a total lodestar figure of $642,398.57.  The Court will award this amount to Movants as attorney's fees.

### D.  Attorney's Fees Owed by Slattery and Staley

Although Defendants' counsel does not request separate treatment of each defendant, the Court finds that the separate treatment is appropriate and necessary.  The jury found only Esmor and Lima liable under RFRA, so Jama was not successful on her RFRA claims against defendants Slattery and Staley.  Therefore, defendants Slattery and Staley are not liable for any attorney's fees.

### III. **CONCLUSION**

For the reasons set forth above, the Movants are entitled to attorney's fees and expenses in the amount of $642,398.57.

/s/ Dickinson R. Debevoise_____
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:          April 23, 2008_____

21